UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO. _____

GULF-TO-BAY ANESTHESIOLOGY
ASSOCIATES, LLC,

     *Plaintiff,*

v.

UNITED HEALTHCARE OF FLORIDA, INC.
UNITED HEALTHCARE INSURANCE CO.,
UMR, INC., and MULTIPLAN, INC.,

     *Defendants.*

_____/

## NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendant, MultiPlan, Inc. ("MultiPlan"), by and through undersigned counsel, and with a full reservation of rights, hereby removes the above-titled matter, *Gulf-to-Bay Anesthesiology Associates, LLC v. United Healthcare of Florida, Inc., et al.*, bearing Case No. 20-CA-008606, from the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, where it is currently pending, to the United States District Court for the Middle District of Florida, and as grounds therefor, alleges as follows:

## INTRODUCTION

1.     As discussed in more detail below, MultiPlan removes this matter on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331 because certain state law causes of action alleged by Plaintiff, Gulf-to-Bay Anesthesiology Associates, LLC ("GTB" or "Plaintiff"), relate to self-funded employee health and welfare benefit plans and therefore arise under and are subject

to federal law pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA").

2.      This action is properly removed to this Court, as it has original jurisdiction based on ERISA's complete preemption doctrine. It is removable without regard to the citizenship or residence of the parties.

### *Background and Procedural History*

3.      On or about November 2, 2020, Plaintiff GTB filed a complaint (the "Complaint" or "Compl.") in the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, in an action styled as *Gulf-to-Bay Anesthesiology Associates, LLC vs. United HealthCare of Florida, Inc., UnitedHealthcare Insurance Co., UMR, Inc., and MultiPlan, Inc.*, and bearing Case No. 20-CA-008606 (the "State Court Action").

4.      MultiPlan was served with process on November 12, 2020. Thus, this Notice of Removal is timely, as it is being filed within thirty (30) days of the date that MultiPlan was served with a copy of the Complaint in accordance with 28 U.S.C. §§ 1441 and 1446.

5.      Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon MultiPlan in the State Court Action are attached hereto as Composite **Exhibit A**.

6.      MultiPlan is not the only defendant named in the Complaint. United Healthcare of Florida, Inc. ("UHC of Florida"), UnitedHealthcare Insurance Co. ("UHIC"), and UMR, Inc. ("UMR" and, together with UHC of Florida and UHIC, "United" or the "United Defendants") are also named as defendants.

7.     As evidenced by the Notice of Consent to Removal, which is attached hereto as **Exhibit B**, United consents to removal of the State Court Action to this Court in accordance with 28 U.S.C. §§ 1446(b)(2)(A) and (C).

### *Plaintiff's Allegations*

8.     GTB provides professional "anesthesia care for surgical and pain management services at over twenty (20) healthcare facilities in Central Florida." [Compl., ¶¶ 1, 17]. GTB allegedly became an out-of-network, nonparticipating provider with United on May 21, 2017, and "[a]t no time since May 21, 2017," has GTB "been a participating provider with any United Defendant" or "been a party to a direct and express contract with United […] that governs the reimbursement, or any other aspect, of the services provided by [GTB] to United['s …] Members." [*Id.* ¶¶ 4–5, 30]. In-network, participating providers, by contrast, enter into participation agreements with United that govern reimbursement rates.

9.     According to the Complaint, UHC of Florida "operates […] as a health maintenance organization," whereas UHIC "operates […] as a life and health insurer" and UMR "operates […] as a third-party administrator." [Compl., ¶¶ 18–20]. However, the United Defendants are "all subsidiaries" operating under the "common control" and "common ownership of UnitedHealth Group," the "largest health insurer in the United States," and when they "enter into participating provider agreements in Florida, [they] do so on behalf of themselves and all 'Affiliates,' which are defined to include 'entities controlling, controlled by or under common control' with each other." [*Id.* ¶¶ 21–22, 279]. Accordingly, a participating provider agreement entered into by one of the United Defendants covers the benefit claims submitted by the participating provider for UHC of Florida, UHIC, and UMR, "among other of the United Defendants' related entities." [*Id.* ¶¶ 22, 279]. Additionally, the United Defendants allegedly

"operate in concert with one another, as they direct that all claims for reimbursement for anesthesia services be uploaded to the same electronic filing portal." [*Id.* ¶¶ 23, 280].

10.     The United Defendants allegedly "assume responsibility to pay for health care services rendered to Members covered by their health plans" in exchange for premiums, fees, or other compensation and offer a range of health plans, which "generally fall into one of two categories:" (i) fully-funded plans, "in which United Defendants collect premiums directly from their members (or from third parties on behalf of their members) and pay claims directly from the pool of funds generated by those premiums;" and (ii) employer-funded plans, "in which United Defendants provide administrative services to their employer clients, including processing, analysis, approval, and payment of health care claims, using the funds of the claimant's employer." [Compl., ¶¶ 48–50].

11.     Regardless of whether a given health plan is fully-funded (i.e., insured by United) or employer-funded (i.e., administered by United as third-party administrator), GTB uses the term "Member" to refer to any individual covered under a health plan that was issued or administered by United. [*See* Compl., ¶ 1].

12      In its Complaint, GTB seeks to recover "full payment" for the "medically necessary anesthesia services" it allegedly rendered "to Florida patients insured by" United or by "an employer-funded health plan for which the United Defendants serve as a third-party administrator." [Compl., ¶¶ 1, 6]. GTB alleges that all of the benefit claims at issue in this action "are for reimbursement for services [GTB] provided at times when it was a non-participating (or 'out-of-network') provider" with United. [*Id.* ¶ 31]. GTB further alleges that it "already sued certain of the Defendants for inadequate reimbursement of out-of-network claims from May 21, 2017 through February 29, 2020, in the case styled *Gulf-to-Bay Anesthesiology Associates, LLC*

*v. UnitedHealthcare of Florida, Inc. and UnitedHealthcare Insurance Co.*, Case No.: 17-CA-011207, in and for the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida" ("*Gulf-to-Bay* I"), and that the at-issue claims in this case "are for the period of time commencing March 1, 2020 and forward." [*Id.* ¶ 14].

13.     As set forth in the Complaint, GTB and United were formerly bound by a Participation Agreement from May 20, 2003 until May 20, 2017. [Compl., ¶ 2]. While that Participation Agreement was in effect, GTB rendered anesthesia services to United's members "at a *modest* discount [rate] off of [GTB's] standard billed charges" in GTB's capacity as a "participating provider in United Defendants' provider network." [Compl., ¶¶ 2–3 (emphasis in original)]. But on May 21, 2017, the Participation Agreement ended, and GTB became an "out-of-network provider" with United. [*Id.* ¶¶ 4–5].

14.     GTB claims that, "[d]espite its out-of-network status," it has continued to provide "medically necessary, covered anesthesiology services" to United's members, but that, "[i]stead of reimbursing [GTB] at either its billed charges or the usual and customary charges for [its] services," United has "dramatically underpaid" GTB for the services it rendered to United's members "by utilizing extraordinarily deficient reimbursement rates […] generated and supplied to [United] by MultiPlan through MultiPlan's Data iSight 'service.'" [Compl., ¶¶ 6–9, 32–34].

15.     Accordingly, the Complaint seeks relief for what GTB describes as "unlawful discounted payments" for the anesthesia services it rendered to United's members, "caused by Defendants' unlawful scheme to deprive [GTB] of its property (claims to and the rights to receive lawful reimbursement amounts) under Florida law." [Compl., ¶¶ 15, 34].

16.     Each count in the Complaint rests on the premise that GTB is allegedly entitled to "charges" or "billed charges" [*see* Compl., ¶ 7, 12, 35, 45–46, 70, 232] under Section 641.513(5)

of the Florida Statutes. GTB also alleges that Section 641.513(5) warrants payment of certain benefits regardless of whether such benefits are covered under the health plans in which United's members participate. [*See, e.g.*, *id.* ¶¶ 35–37]. Importantly, however, GTB specifically acknowledges United's obligation to "determine[]" whether claims for benefits are "***to be covered and allowed as payable***" under the terms of its members' health plans. [*Id.* ¶¶ 12, 45 (emphasis added)].

17.      That premise in the Complaint—that GTB is entitled to "charges" or "billed charges" under Section 641.513(5)—is fundamentally flawed for at least two reasons. First, it is in tension with GTB's allegation that this lawsuit "arises only from claims involving United Defendants' commercial plans and products."[1] [Compl., ¶ 11]. Second, the Complaint repeatedly refers to United's "Members" who received services from GTB [*id.* ¶¶ 1–2, 5–6, 11–12, 32, 34, 41–43, 59, 70, 72, 227, 244, 296, 300, 308, 317], and these "Members" include participants in ERISA plans. [*See id.* ¶ 1 (alleging that GTB is seeking payment in this lawsuit "for the anesthesiology medical care it has rendered to Florida patients insured […] by an employer-funded

---

[1]      For example, § 641.513(5) of the Florida Statutes does not, by its express terms, apply to private employers that self-fund their health plans, and no court has permitted a provider to apply that statute to such plans.

health plan for which the United Defendants serve as a third-party administrator"); *see also* ¶¶ 48–51].[2]

18.     Additionally, while GTB contends that the benefit claims at issue "do not relate to or involve [GTB's] *right* to payment, […] but rather the *rate* of payment [GTB] is entitled to receive for its services" [Compl., ¶ 13 (emphasis in original)], this is expressly belied by GTB's admission that, "[t]hrough this action, [it] seeks to recover the damages […] caused by Defendants' unlawful scheme to deprive [GTB] of its property (claims to and ***the rights to receive lawful reimbursement amounts***) under Florida law." [*Id.* ¶¶ 15, 71 (emphasis added)].

19.     At bottom, GTB seeks to recover benefits under ERISA plans. Therefore, GTB's causes of action necessarily fall within the scope of ERISA and are completely preempted.

20.     Specifically, Counts I and II of the Complaint allege claims against all Defendants for violation of Florida's Racketeer Influenced and Corrupt Organization ("RICO") Act pursuant to Fla. Stat. § 895.03(3) and for conspiracy to violate Florida's RICO Act pursuant to Fla. Stat. § 895.03(4), which are premised on allegations that GTB "was paid substantially less than its charges or a usual and customary rate" for the anesthesia services it rendered to United's members [Compl., ¶ 232], and that "[e]ach Defendant provides benefits to insured Members, processes claims for

---

[2]     ERISA applies to employee welfare benefit plans, which are defined to include: any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C.A. § 1002.

services provided to Members, purports to determine and recommend a reimbursement rate for such services, and/or issues payments for services." [*Id.* ¶ 298; *see also* ¶¶ 227–41, 272, 286–89, 296, 300, 306, 308]. Counts I and II are therefore completely preempted by ERISA. *See All. Med, LLC v. Blue Cross & Blue Shield of Ga., Inc*., 2016 WL 3208077, at *3 (N.D. Ga. June 10, 2016) (holding that claims for "misrepresentation, fraud, unfair trade practices, theft by deception, and RICO conspiracy" were completely preempted by ERISA).

21.     Similarly, Counts III and IV of the Complaint allege claims against all Defendants for violation of Florida's Civil Remedies for Criminal Practices Act ("CRCPA") pursuant to Fla. Stat. § 772.103(3) and for conspiracy to violate CRCPA under Fla. Stat. § 772.103(4) based on allegations that "Defendants had, and continue to have, the common and continuing purpose of depriving [GTB] of the reimbursement to which [it is] entitled" for services rendered to United's members, and that "[e]ach Defendant provides benefits to insured Members, processes claims for services provided to Members, purports to determine and recommend a reimbursement rate for such services, and/or issues payments for services, and knowingly and willingly participants in the scheme to defraud [GTB] and retain funds allocated to [GTB] for anesthesia services rendered to United Defendants' Members." [Compl., ¶¶ 315, 317]. Counts III and IV are therefore completely preempted by ERISA.

22.     Finally, Count V of the Complaint asserts a claim against MultiPlan only for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), which claim is based solely on underpayment allegations, [*see, e.g.*, Compl. ¶ 333: GTB "has received deficient reimbursements from United on all of the Claims at amounts less than [GTB] is entitled to receive;" *see also* ¶¶ 331–32], and thus is completely preempted by ERISA. *See Ehlen Floor Covering, Inc. v. Lamb*, 2008 WL 4097712, at *5 (M.D. Fla. Sept. 3, 2008) (finding that all of the plaintiffs'

claims, including their FDUTA claim, were subject to the ERISA complete preemption doctrine); *Weinberger v. Aetna Health, Inc.*, 2008 WL 11333422, at \*15 (S.D. Fla. Apr. 15, 2008), *report and recommendation adopted*, 2008 WL 11333408 (S.D. Fla. May 27, 2008) (holding that Plaintiff's FDUTA claim was completely preempted by ERISA).

## BASIS FOR REMOVAL

### *Federal Question Jurisdiction – Complete Preemption*

23.    This Court has jurisdiction under 28 U.S.C. § 1331 because GTB's causes of action are completely preempted by ERISA.

24.    Although federal question jurisdiction ordinarily is governed by the well-pleaded complaint rule, "[a]n exception to this rule is when Congress so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Brown v. Connecticut Gen. Life Ins. Co.*, 934 F.2d 1193, 1196 (11th Cir. 1991) (internal quotation omitted). "The effect of this exception is to convert what would ordinarily be a state claim into a claim arising under the laws of the United States." *Id.*; *see also Ehlen Floor Covering, Inc. v. Lamb*, 660 F.3d 1283, 1287 (11th Cir. 2011).

25.    State court actions that fall within the scope of § 502(a) of ERISA, such as a claim for improper denial of benefits under state law, are "displaced" by ERISA's civil enforcement mechanism and are therefore "removable to federal court." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 60 (1987); *see also Lamb*, 660 F.3d at 1287 ("Regardless of its characterization as a state law matter, a claim will be re-characterized as federal in nature if it seeks relief under ERISA."). In fact, when a "federal statute [such as ERISA] completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-08 (2004).

26.     A state law cause of action is subject to complete preemption under ERISA when: (i) the plaintiff "could have brought [its] claim under ERISA § 502(a)(1)(B)"; and (ii) "there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210.

27.     With respect to prong one of the *Davila* test, a claim for relief can be brought under ERISA § 502(a)(1)(B) by a "participant or beneficiary […] to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). This prong is satisfied if a plaintiff has standing to sue and the claim "fall[s] within the scope of ERISA." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1350 (11th Cir. 2009).

28.     By its own admission, GTB has already sued two of the United Defendants, UHC of Florida and UHIC "for inadequate reimbursement of out-of-network claims from May 21, 2017 through February 29, 2020," [*see* Compl., ¶ 14], and that litigation contains evidence that, when GTB submitted the benefit claims to UHIC in order to elicit the payment of available benefits under the terms of the "Members'" plans, GTB represented that the relevant patients/members had assigned their rights to benefits under their health plans to GTB, and that GTB had accepted those assignments.

29.     Similarly, an initial investigation of GTB's claims and allegations in the instant case[3] reveals that, when GTB submitted benefit claims to the United Defendants in order to elicit the payment of available benefits under the terms of the "Members'" plans, GTB specifically represented that the patients had assigned their rights to benefits under the terms of their health plans to GTB.[4] Therefore, GTB—by allegedly stepping into the shoes of its patients—obtained the derivative right to sue and are "beneficiaries" of the health plan for purposes of complete preemption under ERISA. *See, e.g.*, *Conn. State Dental*, 591 F.3d at 1351 (finding that claim forms submitted by dentists to the defendant ERISA plan insurer "suffice to show an assignment of benefits" and confer ERISA standing for removal purposes); *Borrero v. United Healthcare of New York, Inc.*, 610 F.3d 1296, 1302–04 (11th Cir. 2010) (rejecting the arguments raised by medical provider Plaintiff who contested the adequacy of claim forms as the basis for finding they possessed derivative standing under ERISA for removal purposes).

30.     GTB also submitted reimbursement benefit claims directly to the United Defendants and received payments from the United Defendants for certain of the benefit claims. [*See* Compl. ¶¶ 6–7, 32–34]. These direct payments further support prong one of the *Davila* test. *See Conn. State Dental*, 591 F.3d at 1353; *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 701

---

[3]     Aside from ¶¶ 120–122 of the Complaint, where GTB loosely identifies six (6) exemplary claims that it submitted to the United Defendants during the time period allegedly at issue, GTB fails to provide any claim-specific identifying information for the claims it purports to place at issue in this lawsuit. This omission has limited MultiPlan's ability to collect and present evidence to the Court along with this Notice. However, MultiPlan's investigation continues, and MultiPlan specifically reserves the right to submit additional evidence in opposition to any motion to remand that GTB may file. MultiPlan also reserves the right to seek permission to conduct limited jurisdictional discovery to resolve any factual disputes presented herein, including with respect to GTB's receipt of assignment of benefits and/or the nature of the claims or underlying health benefit plans allegedly at issue. *See, e.g.*, *United Surgical Assistants, LLC v. Aetna Life Ins. Co.*, 2014 WL 1268659, at *3 (M.D. Fla. March 27, 2014) (granting motion to allow post-removal jurisdictional discovery regarding assignment of benefits in case involving question of federal subject matter jurisdiction on basis of ERISA preemption).

(7th Cir. 1991) ("The possibility of direct payment is enough to establish subject-matter jurisdiction.").

31.     With respect to prong two of the *Davila* test, there is no legal duty implicated here independent of the members' plans. "If the right to payment derives from the ERISA benefit plan as opposed to another independent obligation, the resolution of a right to payment dispute requires an interpretation of the plan." *Gables Ins. Recovery v. United Healthcare Ins. Co.*, 39 F. Supp. 3d 1377, 1388 (S.D. Fla. 2013).

32.     Here, this distinction is irrelevant because GTB repeatedly alleges that it is "out-of-network" and "has not been part[y] to a contract with United that governs the reimbursement, or any other suspect, of the services provided by" GTB to United's Members since May 21, 2017, [Compl., ¶¶ 5–6, 30–33]; thus, there is no independent contractual right to reimbursement at rates higher than what is afforded under the members' health plans. *See, e.g.*, *Sarasota Cty. Pub. Hospital Bd. v. Blue Cross and Blue Shield of Fla., Inc.,* 2019 WL 2567979, at *3 (M.D. Fla. June 21, 2019) (dismissing counts for breach of provider agreements as "irrelevant" to the question of standing where plaintiff brought other counts asserting ERISA right-to-payment claims, which conferred standing to sue). The reimbursement amounts that the United Defendants have paid to GTB for the services at issue in this lawsuit—as a non-participating provider—are set by the

---

[4]     Attached hereto as **Exhibit D** is the benefit claim submission data (redacted to exclude personal health information) and a provider remittance advice form ("PRAs") (redacted to exclude personal health information) related to certain benefit claims that GTB submitted to the United Defendants on or after March 1, 2020. Specifically, **Exhibit D(1)** contains the benefit claim submission data and a PRA relating to patient RB, who is identified in ¶ 120 of the Complaint. This benefit claim submission data contains authorization and assignment acknowledgements (*see* Boxes 12 and 13), whereby GTB represented that benefits were assigned to it, meaning that it obtained a signed authorization and assignment of benefits from the plan member or beneficiary, allowing GTB to receive benefits under the applicable employee benefit plan. *See also* **Exhibits D(2)** and **D(3)**.

coverage terms of the members' health plans. *See Gables Ins. Recovery*, 39 F. Supp. 3d at 1388 (finding ERISA completely preempted state law claims and holding, "any determination of benefits under the terms of an ERISA plan, even regarding a seeming independent breach of oral or implied contract based on verification of those benefits, falls under ERISA and is a legal duty dependent on, not independent of, the ERISA plan."). Thus, determining the core issue of whether GTB has been denied payment or coverage for the services at issue in this lawsuit will necessarily require the Court to interpret those member's health plans, squarely bringing these claims within the scope of ERISA preemption. *See id.* ("If the right to payment derives from the ERISA benefit plan as opposed to another independent obligation, the resolution of a right to payment dispute requires an interpretation of the plan.").

33.    Any attempt to rely on a purported distinction between so-called "right to payment" claims and "rate of payment" claims to oppose preemption is unavailing. The Eleventh Circuit Court of Appeals has applied this distinction only in cases where a healthcare provider has an express written participation agreement with a managed care organization and is suing for breach of contract under that express agreement.[5] Here, as GTB repeatedly alleges, there is no participating provider agreement that independently supplies either a right to payment or a rate of

---

[5]    *See Conn. State Dental*, 591 F.3d at 1350; *see also Apex Toxicology, LLC v. United Healthcare Ins. Co.*, No. 16-CV-62768, 2017 WL 7806152, at *5 (S.D. Fla. June 26, 2017) (concluding that the benefit claims at issue involved the denial of benefit claims under ERISA because "[t]he distinction between 'rate of payment' and 'right of payment' […] is irrelevant in cases involving out-of-network providers because a 'rate of payment' dispute is governed by the provider agreement.") (citing *Conn. State Dental*, 591 F.3d at 1349); *See also Alliance Med, LLC v. Blue Cross and Blue Shield of Georgia, Inc.*, 15-cv-00171-RWS, 2016 WL 3208077, at *3 (N.D. Ga. June 10, 2016) ("Although Plaintiffs rely on the distinction between 'rate of payment' and 'right of payment,' this distinction is irrelevant in cases involving out of network providers because a 'rate of payment' dispute is governed by the provider agreement. Plaintiffs in this case are not in-network providers and thus do not hold a provider agreement with Defendants. Therefore, these claims are within the scope of ERISA.") (citing *Conn. State Dental*, 591 F.3d at 1349).

payment. For that reason, it is irrelevant whether the right to payment or rate of payment is implicated by Plaintiffs' claims.[6]

34.     Even if this "rate of payment" versus "right to payment" dichotomy applies in the case of a plaintiff-provider that admits it has no contract with the defendants (which is the case), GTB's claims in this case still implicate "right to payment" issuesand thus are completely preempted by ERISA. *See generally Borrero*, 610 F.3d at 1301–05 (citing *Conn. State Dental*, 591 F.3d at 1350–54)). GTB actually concedes this point when it asserts that, "[t]hrough this action, [it] seeks to recover the damages [...] caused by Defendants' unlawful scheme to deprive [GTB] of its property (claims to and ***the rights to receive lawful reimbursement amounts***) under Florida law." [Compl., ¶¶ 15, 71 (emphasis added)].

35.     GTB further acknowledges and refers to the United Defendants' obligation to "Members," including referencing the determination of coverage under the members' health plans insured or administered by United. [*See, e.g.*, Compl., ¶ 12]. Accordingly, GTB cannot evade ERISA preemption by incorrectly describing its claims as implicating only a "rate of payment," when those claims actually implicate a "right to payment" under the operative ERISA health benefit plans, including contracts between the United Defendants and members of fully-insured ERISA plans. For example, GTB alleges on numerous occasions that Florida law has been violated because "the united Defendants have dramatically underpaid [GTB] for its services" rendered to United's members. [*See, e.g.*, *id.* ¶ 7]. But GTB was aware of how such benefit payment

---

[6]     *See, e.g.*, *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182 (5th Cir. 2015*); Emerus Hosp. v. Health Care Serv. Corp.*, 2020 WL 1675665, at *5 (N.D. Ill. Apr. 6, 2020); *Hill Country Emergency Med. Assocs, P.A. v. UnitedHealthCare Ins. Co.*, No. 19-cv-00548-RP, Order at 7–8 (W.D. Tex. Dec. 10, 2019); *Bassel v. Aetna Health Ins. Co. of N.Y.*, 2018 WL 4288635, at *6 (E.D.N.Y. Sept. 7, 2018); *Apex Toxicology, LLC v. United Healthcare Ins. Co.*, 2017 WL 7806152, at *5 (S.D. Fla. June 26, 2017); *Sportscare of Am., P.C. v. Multiplan, Inc.*, 2011 WL 223724, at *4 (D.N.J. Jan. 24, 2011).

determinations would be made in relation to United's Members, including by the United Defendants "process[ing] claims for services provided to Members" and determining claims "to be covered and allowed as payable," consistent with the terms of the members' benefit plans. [*Id.* ¶¶ 12, 45, 298].

36.     GTB also repeatedly refers to "covered" services—i.e., services covered under the terms of the members' benefit plans. [Compl. ¶¶ 12, 32, 45]. An initial investigation into GTB claims and allegations reveals that at least some of the benefit claims that GTB submitted during the relevant time period were made from ERISA plans and are comprised of claim lines that reflect either partial payment of some claim lines and denials of other claim lines or reductions based on the terms of the patient's health benefit plan.[7] *See Borrero*, 610 F.3d at 1302 (applying Eleventh Circuit precedent concluding that providers' complaint "challenged both the rate of payment and the right to payment under the ERISA plan because it alleged that the administrator both paid them the wrong rate and denied payment altogether for 'medically necessary' services, a coverage determination defined by the beneficiary's ERISA plan.") (citing *Conn. State Dental*, 591 F.3d at 1350–51). GTB purports not to pursue "any claims in which benefits were denied," [*see* Compl., ¶ 13], but at the same time specifically admits that "the reimbursement claims within the scope of this action are ones that were determined to be covered and allowed as payable by the United Defendants but [… were] paid [by the United Defendants] at rates below both the billed charges

---

[7]     **Exhibits D(2)** and **D(3)** contain claim submission data (redacted to exclude personal health information) and PRAs (redacted to exclude personal health information) related to certain claims that GTB submitted to the United Defendants on or after March 1, 2020, pursuant to employer-sponsored health benefit plans. The PRAs included in **Exhibits D(2)** and **D(3)** reflect that the claims submitted included multiple claims lines, some of which were partially paid, and some of which were denied. Additionally, **Exhibit D(1)** contains claim submission data and a PRA relating to patient RB, who is identified in ¶ 120 of the Complaint. The PRA included in Exhibit "D(1)" reflects that payment on the claim was reduced based on the plan terms and benefits, which implicates the question of whether GTB has a "right to payment" of that portion of the claim.

and the usual and customary provider charges for similar services in the community where [GTB] rendered such services to United's Members […] for the period of time commencing March 1, 2020 and forward," [*id.* ¶¶ 12, 14], which necessarily includes such "hybrid" claims—i.e., claims comprised of claim lines for services that were partially paid and claim lines that were denied— that the Eleventh Circuit has concluded come within ERISA. *Borrero*, 610 F.3d at 1302–03. For this additional reason, the Complaint implicates GTB's "right to payment" for the benefit claims, as coverage determinations are directly at issue.

37.     At its core, GTB's Complaint challenges benefit determinations based upon GTB's submission of reimbursement benefit claims under various health plans insured or administered by the United Defendants. GTB's attempt to cast its causes of action under state-law principles of state statutory violations, conspiracy, and unfair trade practices does not allow GTB to circumvent ERISA preemption: "[m]erely referring to labels affixed to claims to distinguish between preempted and non-preempted claims is not helpful because doing so would elevate form over substance and allow parties to evade the pre-emptive scope of ERISA." *Gables Ins. Recovery, Inc. v. Blue Cross & Blue Shield of Florida, Inc.*, 813 F.3d 1333, 1337 n.2 (11th Cir. 2015) (internal quotation and citation omitted).[8]

38.     The ERISA plans associated with each of the reimbursement benefit claims at issue in the Complaint must be examined in order to consider the merits of the benefit claim

---

[8]     Recently, the court in *Sarasota County Public Hospital Board v. Blue Cross and Blue Shield of Florida, Inc.* denied a motion to remand on account of ERISA preemption because the complaint "appears to include coverage denials under ERISA-regulated plans," and noted that "even a dispute about a single coverage determination under an ERISA-regulated plan establishes complete preemption." 2019 WL 2567979, at *3 (M.D. Fla. June 21, 2019). The court further held that "because several of the purported breach of contract claims challenge the defendants' coverage determinations, ERISA, and not an independent legal duty, controls these claims." *Id.* The same reasoning applies here.

adjudications that GTB contests, as each plan will establish its own standard for determining allowed amounts for out-of-network services.[9] Therefore, regardless of how GTB has labeled its causes of action, each count of the Complaint is necessarily preempted by ERISA.

### *Supplemental Jurisdiction*

39.     As GTB's own allegations make clear, at least some of the reimbursement benefit claims at issue in the Complaint are subject to complete preemption under ERISA insofar as they relate to an employer-sponsored benefit plan that is subject to ERISA. However, to the extent that complete preemption does not apply to, and federal question jurisdiction does not exist for, all of the reimbursement benefit claims contested by GTB, those claims should still remain in this Court under 28 U.S.C. § 1367(a), because GTB's claims "are so related [… that they] form part of the same case or controversy under Article III of the United States Constitution." *Ala. Dental Ass'n v. Blue Cross and Blue Shield of Ala., Inc.*, 2007 WL 25488 at *8 (M.D. Ala. Jan. 3, 2007).

40.     In deciding whether a state-law claim is part of the same case or controversy as a federal issue, such that the court should exercise supplemental jurisdiction over the former, courts look to whether the claims arise from the same facts or involve similar occurrences, witnesses or evidence. *Anesthesiology Assocs. of Tallahassee, Fla. P.A. v. Blue Cross and Blue Shield of Fla, Inc.*, 2005 WL 6717869 at *3 (11th Cir. Mar. 18, 2005) ("Both sets of [plaintiff's] claims are based on the plan participants' rights to reimbursement from BCBS for medical service expenses performed."). Here, GTB's claims all relate to the same common nucleus of facts because they all relate to whether, as GTB contends, it is entitled, under benefit plans insured or administered by

---

[9]     Because self-funded benefit plans are free from any state insurance regulation, their provisions constitute the sole source of payment obligations. *See FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990) (announcing that state insurance regulations "do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws.").

the United Defendants, to reimbursement at "either its billed charges or the usual and customary charges," or whether the amount payable on the health benefit claims submitted by GTB should be as specified under the terms of the members' health plans insured or administered by United. [*See, e.g.*, Compl. ¶¶ 1, 7]. Accordingly, this Court should exercise jurisdiction over the entire controversy presented in the Complaint. *See Current Wave Medical Sys., Inc. v. Cigna Corp.*, 2007 WL 5389120, at *3, n.1 (M.D. Fla. Aug. 3, 2007).

41.     And while there may be claims for benefits that implicate non-ERISA plans, any such claims are still properly before this Court under its supplemental jurisdiction, and therefore, removal of GTB's Complaint in its entirety is appropriate. *See* 28 U.S.C. § 1367(a); *Current Wave Med. Sys., Inc. v. Cigna Corp.*, 2007 WL 5389120, *3, n.1 (M.D. Fla. Aug. 3, 2007).

## PROCEDURAL REQUIREMENTS FOR REMOVAL

42.     The procedural requirements for removal in 28 U.S.C. § 1446 are all satisfied here.

43.     Subsection (a) of that provision requires the removing party to file a notice of removal, signed in accordance with Federal Rule of Civil Procedure 11, "in the district court of the United States for the district and division within which such action is pending," which MultiPlan has done through the filing of this Notice.

44.     Additionally, under 28 U.S.C. § 1441(a), removal is appropriate "to the district court of the United States for the district and division embracing the place where such action is pending." Venue is therefore proper in this Court pursuant to § 1441(a) and § 1446(a), as the Circuit Court for the Thirteenth Judicial District in and for Hillsborough County, Florida, in which the State Court Action is pending, is within the jurisdictional confines of the Middle District of Florida.

45.     MultiPlan was served with process on November 12, 2020, and the United Defendants consent to the removal of this action as evidenced by the written consent attached hereto as **Exhibit B**. Because this Notice is being filed within thirty (30) days after the receipt by MultiPlan, through service of process or otherwise, of a copy of Plaintiff's Complaint, removal is timely under 28 U.S.C. § 1446(b).

46.     Upon the filing of this Notice, MultiPlan has, at the same time, provided notice to Plaintiff pursuant to 28 U.S.C. § 1446(d), by furnishing a copy of this Notice and all attachments hereto to Plaintiff, through its counsel of record as identified in the Complaint, and will simultaneously provide notice to the Clerk of Court for the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, through the filing of this Notice and a separate Notice to State Court of Removal of Civil Action, a copy of which is attached hereto as **Exhibit C**, into the record of the State Court Action.

47.     MultiPlan files this Notice without waiving any defenses, arguments, objections, obligations, or principles of law or equity that may exist in its favor in state or federal court, including, but not limited to, the right to object to jurisdiction over the person, service of process, or the sufficiency of process, or the right to seek dismissal of the Complaint, compel arbitration, or both, as permitted by the Federal Rules of Civil Procedure or by state or federal law, and expressly reserves its right to assert any and all defenses and objections to which it may be entitled in subsequent proceedings.

48.     The allegations of this Notice are true and correct and within the jurisdiction of the United States District Court for the Middle District of Florida, and for the reasons set forth above, Plaintiff's claims and causes of actions are believed to be removable to this Court pursuant to 28

U.S.C. §§ 1331, 1441, and 1446. MultiPlan therefore requests that this Court assume full jurisdiction over this action.

49.    If any question arises as to the propriety of this removal, MultiPlan requests the opportunity to present written and oral argument in support of removal and also requests the right to conduct jurisdictional discovery.

**WHEREFORE**, MultiPlan respectfully gives notice to this Court that the above-styled civil action has been removed from the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida to the United States District Court for the Middle District of Florida in accordance with the foregoing legal authorities and pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, for further proceedings and disposition, and that the parties are to take no further action with regard to this matter in the State Court Action. MultiPlan also prays that it be granted all such other and further relief as this Court deems just and proper on the grounds asserted in this Notice and states that no previous application has been made for the relief prayed for herein.

RESPECTFULLY SUBMITTED this 11th day of December, 2020.

/s/ Bret M. Feldman
BRET M. FELDMAN, FBN 370370
PHELPS DUNBAR LLP
100 South Ashley Drive, Ste. 2000
Tampa, Florida  33602-5315
(813) 472-7879
(813) 472-7570 (Fax)
Bret.feldman@phelps.com

ATTORNEYS FOR MULTIPLAN, INC.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing was filed with the Clerk of Court via the CM/ECF e-filing portal and that a true and correct copy of the foregoing was served upon all parties who have registered for electronic service with the Court's e-filing portal on this 11th day of December, 2020.

*/s Bret M. Feldman*

Bret M. Feldman
